UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6199-CR-FERGUSON

UNITED STATES OF AMERICA )
)
)
v. )
)
)
RONALD COXE, )
STEPHEN CLARK, and )
ROBERT ESKIN, )
)
Defendants. )
_____ )

**NIGHT BOX**
**FILED**

SEP 1 4 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## GOVERNMENT'S SUPPLEMENTAL RESPONSE
## TO STANDING DISCOVERY ORDER

The United States files this response to the supplemental Standing Discovery Order issued

in this case. This supplemental response is numbered to correspond to that Order.

A.   5.   Books, papers, documents, photographs, tangible objects, buildings or
places which the government intends to use as evidence at trial to prove its
case in chief, or were obtained or belonging to the defendant may be
inspected on a mutually convenient time at the Office of the United States
Attorney, 500 East Broward Boulevard, Suite 700 in Fort Lauderdale,
Florida. Please call the undersigned to set up a date and time that is
convenient to the parties. The attachments to this discovery response are
not necessarily copies of all the books, papers, documents, etc., that the
government may intend to introduce at trial. Such attachments include:
copy of application, affidavit, and order obtained for teletracker to attach
to defendant Coxe's vehicle and warrant to search unit 4 at Uncle Bob's
Self Storage

B.   DEMAND FOR RECIPROCAL DISCOVERY: The United States
requests the disclosure and production of materials enumerated as items 1,
2 and 3 of Section B of the Standing Discovery Order. This request is also
made pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure.



H.          The government will advise the defendant prior to trial of its intent, if any, to introduce during its case in chief proof of evidence pursuant to F.R.E. 404(b). You are hereby on notice that all evidence made available to you for inspection, as well as all statements disclosed herein or in any future discovery letter, may be offered in the trial of this cause, under F.R.E. 404(b) or otherwise (including the inextricably-intertwined doctrine).

The government is aware of its continuing duty to disclose such newly discovered additional information required by the Standing Discovery Order, Rule 16(c) of the Federal Rules of Criminal Procedure, Brady, Giglio, Napue, and the obligation to assure a fair trial.

In addition to the request made above by the government pursuant to both Section B of the Standing Discovery Order and Rule 16(b) of the Federal Rules of Criminal Procedure, in accordance with Rule 12.1 of the Federal Rules of Criminal Procedure, the government hereby demands Notice of Alibi defense; the approximate time, date, and place of the offense was:

        Date:   July 18, 2000
        Place:  Southern Self Storage, 8452 West Okeechobee Boulevard, West Palm Beach, Florida

           Respectfully submitted,

           GUY A. LEWIS
           UNITED STATES ATTORNEY

By:                               

           DONALD F. CHASE, II
           ASSISTANT UNITED STATES ATTORNEY
           Court No. A5500077
           500 East Broward Boulevard, Suite 700
           Fort Lauderdale. Florida 33394
           Tel: (954) 356-7255
           Fax: (954) 356-7336

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was delivered by United

States mail this 15th day of September 2000 to Neal Sandberg, Esq., 2650 Biscayne Boulevard,

Miami, Florida 33137-4590, Thomas Garland, Esq., 1541 SE Port St. Lucie Boulevard, Port St.

Lucie, FL 34952; and Neal Lewis, Esq., Two Datran Center, Suite 1609, 9130 South Dadeland

Boulevard, Miami, Florida 33156-7849.

DONALD F. CHASE, II
ASSISTANT UNITED STATES ATTORNEY

# United States District Court

SOUTHERN _____ DISTRICT OF _____ FLORIDA

In the Matter of the Search of
(Name, address or brief deposition of person, property or premises to be searched)

Unit 4
Uncle Bob's Self Storage
7363 Lake Worth Road
Lake Worth, Palm Beach County, Florida

**APPLICATION AND AFFIDAVIT**
**FOR SEARCH WARRANT**

**CASE NUMBER:**

I Thomas Masters, Special Agent, DEA _____ being duly sworn depose and say:

I am a(n) Special Agent, Drug Enforcement Administration _____ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)
A 20 foot by 20 foot storage bay with the number 4 on the outside, located at Uncle
Bob's Self Storage, 7363 Lake Worth Road, Palm Beach County, Florida. The bay has two
entry doors with no wall dividing the bay.

in the _____ SOUTHERN _____ District of _____ FLORIDA

there is now concealed a certain person or property, namely (describe the person or property to be seized)
Marijuana; materials utilized in the packaging and concealment of marijuana; any
conveyance utilized for the purpose of transporting marijuana; records and receipts
relating to the transportation of marijuana.

which is (state one or more bases for search and seizure set forth under Rule 4° (b) of the Federal Rules of Criminal Procedure)
property that constitutes evidence of a commission of a criminal offense; and
contraband, the fruits of a crime or things criminally possessed.
concerning a violation of Title _____ 21 _____ United States Code, Section(s) 841(a)(1) and 846 _____ .

The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part thereof:    ☒ Yes    ☐ No

THOMAS MASTERS, SPECIAL AGENT, DEA
Signature of Affiant

Sworn to before me, and subscribed in my presence,

_____    at  West Palm Beach, Florida
Date                                           City and State

ANN E. VITUNAC, U.S. MAGISTRATE JUDGE
Name and Title of Judicial Officer                Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your affiant, Thomas D. Masters, being duly sworn, deposes and states:

1.    I am a Special Agent of the United States Department of Justice, Drug Enforcement Administration (hereinafter referred to as "DEA"), within the meaning of Section 878 (a) of Title 21, United States Code, and thus am an agent empowered by law to conduct investigations, make arrests, and seize property for violations of Title 18, United States Code and Title 21, United States Code. I have been employed by the DEA since 1997 and have worked at the Florence, South Carolina Resident Office and the Fort Lauderdale, Florida District Office of the DEA. Prior to appointment as a Special Agent, I was employed as a Probation and Parole Agent by the South Carolina Probation, Parole, and Pardon Services for approximately four years. I have received specialized training in narcotics investigations, identification of narcotics, and the laws of search and seizure. The information set forth in this affidavit is based upon my own personal knowledge, as well as information provided to me by other persons and law enforcement officers involved in this investigation. This affidavit is intended to serve as a summary of the following investigation and does not include each and every detail.

2.    On April 5, 2000, DEA Task Force Agents, DEA Special Agents, and members of the North Broward Drug Enforcement Unit were conducting surveillance of an unindicted co-conspirator. During surveillance conducted at the unindicted coconspirator's residence, law enforcement officers observed what appeared to be a narcotics transaction between the unindicted co-conspirator and a person later identified as William GREENWALD.

1

GREENWALD has a prior criminal history for violation of narcotics laws. Shortly after GREENWALD arrived at the unindicted co-conspirator's residence, GREENWALD and the unindicted co-conspirator exited the residence and left the area in separate vehicles. Both subjects were followed away from the residence by two surveillance teams. GREENWALD was later stopped by surveillance units and found to be in possession of approximately 2 pounds of marijuana.

3.      The unindicted co-conspirator was followed by surveillance to a restaurant located at the 2200 block of West Glades Road in Boca Raton, Florida where he met with a person later identified as RONALD COXE (hereinafter referred to as "COXE"). COXE is a prior convicted narcotics trafficker. COXE had arrived at said location driving a 1977 Cadillac El Dorado. Both men were approached by members of the surveillance team who requested consent to search both the unindicted co-conspirator's and COXE'S vehicles. Consent was granted and a certified narcotics detection canine alerted positively to a box located inside the unindicted co-conspirator's vehicle. A search of the box revealed that the box contained $220,000.00 in U. S. currency. The currency was seized by law enforcement on that date. The trunk area of COXE'S Cadillac was also alerted to by the certified narcotics detection canine. A search of the vehicle revealed three empty, large canvas bags that had a strong odor of marijuana emitting from them. The bags were also seized at the scene on that date.

4.      On April 19, 2000, surveillance was once again established on the unindicted co-conspirator. The purpose of the surveillance was to execute an arrest warrant for the unindicted co-conspirator issued in Broward County for felony possession of marijuana. The unindicted co-conspirator was stopped in Boynton Beach, Florida and taken into custody

pursuant to the arrest warrant. A search incident to arrest revealed that the unindicted co-conspirator was in possession of $50,000.00 in U. S. currency.  This money was seized by law enforcement at the scene on that date.  The unindicted co-conspirator advised law enforcement officers that he (the unindicted co-conspirator) was taking the money to COXE to pay a portion of a debt owed for a previous marijuana shipment.

5.     In May of 2000, the unindicted co-conspirator decided to cooperate with law enforcement and provided the following information as it pertains to this investigation:   The unindicted co-conspirator stated that ROBERT ESKIN (hereinafter referred to as "ESKIN"), STEPHEN CLARK (hereinafter referred to as "CLARK"), and other persons in the South Florida area were recruited to act as drivers, transporters and "catchers," (persons that accept mailed packages of marijuana and safely store the same until distributed) for the marijuana shipped from Arizona to South Florida.  ESKIN and CLARK acquired post office boxes and warehouses that were to be utilized to "catch" and store shipments of marijuana that were mailed to Florida from Arizona.  The unindicted co-conspirator advised that approximately five shipments of marijuana totaling between 100 and 200 pounds per mailing were mailed. The unindicted co-conspirator stated that around April of 1998 he and his co-conspirators decided to utilize a 19' boat with a hidden compartment to transport the marijuana shipments by a trailer carrying said boat towed by a vehicle between Arizona and Florida.  The unindicted co-conspirator said that the 19' boat was driven from Florida to Arizona, loaded with marijuana, and driven back to Florida. The unindicted co-conspirator said that each load weighed between 150 and 200 pounds. The unindicted co-conspirator stated that they employed several other persons to assist with the storage and distribution of the marijuana. The

3

unindicted co-conspirator stated that the 19' boat was difficult to transport so COXE came up with a plan to utilize two smaller boats with hidden compartments to transport the marijuana between Arizona and Florida. The unindicted co-conspirator stated that each boat could hold about 200 pounds of marijuana inside the hidden compartments. The unindicted co-conspirator said that the boats began to be used to transport the marijuana between Arizona and Florida in April of 1999. Furthermore, the unindicted co-conspirator stated that both boats were routinely used during the same trips back and forth between Florida and Arizona, so that if one boat was stopped by law enforcement the other would make it through. The unindicted co-conspirator also stated that just one boat would contain an amount of marijuana under the minimum guidelines for federal prosecution.

6.     The unindicted co-conspirator stated that CLARK and ESKIN were the main drivers once the marijuana was purchased and the hidden compartments in the boats were loaded and secured. The unindicted co-conspirator said that COXE was one of the individuals responsible for purchasing the marijuana from the Arizona marijuana supplier. The unindicted co-conspirator stated that he, ESKIN, and COXE would secure warehouses in South Florida to store the load of marijuana and the transport vehicles. The unindicted co-conspirator and COXE were responsible for removing the rivets on the plate that covered the hidden compartment in the boats, removing the marijuana, and re-securing the plate to the boats. The unindicted co-conspirator stated that approximately 10 loads of marijuana were transported by using the boats from Arizona to Florida prior to the seizure by law enforcement from the unindicted co-conspirator of the $270,000.00 in U. S. currency on April 5 and 19, 2000.

7.     During the week of July 7, 2000, information was received that COXE and ESKIN

4

were planing to travel to Arizona for the purpose of purchasing and transporting marijuana from Arizona to South Florida. The marijuana was to be transported in the same manner as the previous 10 loads. Your affiant learned of this proposed shipment of marijuana through a series of recorded telephone calls and face to face meetings between the unindicted co-conspirator, COXE, and ESKIN. During a July 6, 2000 recorded meeting between COXE and the unindicted co-conspirator, COXE stated that he planned to fly to Arizona on July 10, 2000. Southwest Airlines confirmed that COXE did travel to Arizona using his middle name "Arthur COXE" on that date.

8.      During a meeting between ESKIN and the unindicted co-conspirator recorded on July 11, 2000, ESKIN stated that he had spoken to COXE in Arizona. ESKIN then placed a call to COXE in Arizona and both the unindicted co-conspirator and ESKIN discussed the proposed marijuana shipment with COXE. Later that day, during a recorded phone call between the unindicted co-conspirator and ESKIN, ESKIN stated that he (ESKIN) was probably leaving for Arizona on either July 12 or 13, 2000, for the purpose of driving the marijuana laden boat to South Florida.

9.      On July 13, 2000, a court order was sought and obtained from Magistrate Judge Barry Seltzer to attach an electronic tracking device to a 1977 Cadillac El Dorado, Florida tag 146-251 registered to and used by COXE.

10.     On July 18, 2000, your affiant and other law enforcement officers were conducting surveillance at Southern Self Storage located at 8452 West Okeechobee Boulevard in West Palm Beach, Palm Beach County, Florida. The officers conducting surveillance observed a 1977 Cadillac El Dorado bearing Florida tag 146-251, arrive at said storage facility driven by

5

RONALD COXE (hereinafter referred to as "COXE") with STEPHEN CLARK (hereinafter referred to as "CLARK") seated in the front passenger seat. This vehicle proceeded to storage unit L-29 and parked. Your affiant was unable because of his surveillance position to observe what occurred inside storage unit L-29 after the 1977 Cadillac El Dorado parked. However, CLARK was not observed by your affiant departing from the storage unit or its immediate vicinity once the 1977 Cadillac El Dorado was parked. Approximately 40 minutes after initially arriving at storage unit L-29, COXE repositioned the 1977 Cadillac El Dorado by backing into said unit causing your affiant's view of the 1977 Cadillac El Dorado's trunk to become obstructed.

11.     Approximately 45 minutes after the vehicle was parked inside storage unit L-29, the 1977 Cadillac El Dorado with COXE driving and CLARK seated in the front passenger seat left storage unit L-29, departed the storage facility, and was subsequently stopped by law enforcement. A canine trained in the detection of narcotics, Bingo, was summoned and positively alerted to the presence of drugs within the trunk of the 1977 Cadillac El Dorado and storage unit L-29. After the canine alerted positively to the presence of drugs inside the trunk of the 1977 Cadillac El Dorado, COXE advised a law enforcement officer that marijuana was present in said car's trunk and hidden in a boat stored in unit L-29. COXE subsequently gave permission for law enforcement to search the 1977 Cadillac El Dorado, the boat inside storage unit L-29, and the storage unit itself. COXE relinquished the keys to both the 1977 Cadillac El Dorado and storage unit L-29 to law enforcement so the searches could be conducted.

12.     The search of storage unit L-29 led to the confiscation of a boat after seven bales of marijuana each weighing approximately 20 pounds for a total of 140 pounds were found

6

underneath the seats inside a hidden compartment closed shut by rivets and bolts.

13.  The search of the trunk of the 1977 Cadillac El Dorado led to the discovery and seizure

of the following items:

> Three bales of marijuana weighing approximately 20 pounds each for a total of
> 60 pounds inside said car's trunk.
>
> Underneath the marijuana bales found inside the car's trunk, were two pairs of
> gloves.
>
> A rivet gun inside said car's trunk.
>
> A tool box containing screwdrivers and other tools.
>
> Two cordless drills with bits attached for rivets and bolts of the same size as the
> rivets and bolts used to close the hidden compartment found to contain
> marijuana on the boat.

14.  The packaging of the ten bales of marijuana seized from the boat and the trunk of the

1977 Cadillac El Dorado was similar.  I have viewed the contents of the ten seized bales and,

based upon my training and experience, I know the same to be marijuana.

15.  A search of COXE'S person led to the discovery of a business card for Uncle Bob's

Self Storage, located at 7363 Lake Worth Road, Lake Worth, Palm Beach County, Florida.

16.  Subsequent to the arrests of COXE and CLARK, ESKIN had a series of conversations

with the unindicted co-conspirator.  During a meeting recorded on July 18, 2000, ESKIN told

the unindicted co-conspirator that:

> ESKIN was aware that there was another boat similar in nature (to that of the
>
> one mentioned in paragraph #12) inside one of COXE'S warehouses.  ESKIN
>
> was not certain if the boat contained marijuana, but he (ESKIN) would not be
>
> surprise him (ESKIN) if it did.

17.    On July 20, 2000, an inquiry was made of Uncle Bob's Self Storage, 7363 Lake Worth Road, Lake Worth, Florida which led to the identification of storage unit 4, as being rented to COXE. Unit #4 was described to law enforcement as a 20 foot by 20 foot storage bay with two doors.

18.    A canine trained in the detection of narcotics, Bingo, the same canine mentioned in paragraph 11, was summoned and positively alerted to the presence of drugs within storage unit 4 at the above-stated address.

19.    Based upon your affiant's experience and training and the totality of the facts obtained during the investigation, your affiant believes that in the premises located at 7363 Lake Worth Road, Lake Worth, Palm Beach County, Florida, there is evidence of possession with intent to distribute marijuana and conspiracy to commit the same which are violations of Title 21, United States Code, Sections 841(a) (1) and 846.

FURTHER AFFIANT SAYETH NAUGHT.


_____
THOMAS D. MASTERS, SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Subscribed and sworn to me
before this 20th day of July 2000.


_____
ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

8

# United States District Court

_____SOUTHERN_____ DISTRICT OF _____FLORIDA_____

In the Matter of the Search of
(Name, address or brief description of property or person to be searched)

**SEARCH WARRANT**

CASE NUMBER:

Unit #4
Uncle Bob's Self Storage
7363 Lake Worth Road
Lake Worth, Palm Beach County, Florida

TO: Thomas Masters, Special Agent, DEA____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by Thomas Masters, Special Agent_____ who has reason to
                                          Affiant

believe that ☐ on the person of ☒ on the premises known as    (name, description and/or location)
A 20 foot by 20 foot storage bay with the number 4 on the outside, located at Uncle
Bob's Self Storage, 7363 Lake Worth Road, Lake Worth, Palm Beach County, Florida.  The
bay has two entry doors with no wall dividing the bay.

in the_____SOUTHERN_____ District of _____FLORIDA_____ there is no
concealed a certain person or property, namely: (describe the person or property)

Marijuana; materials utilized in the packaging and concealment of marijuana; any
conveyance utilized for the purpose of transporting marijauna; records and receipts
relating to the transportation of marijuana.

I am satisfied that the affidavit(s) which is attached hereto and incorporates herein by reference and any recorded
testimony establish probable cause to believe that the person or property so described is now concealed on the
person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before_____ 80 July 2000
                                                          Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant
and making the search (in the daytime - 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find
reasonable cause has been established) and if the person or property be found there to seize same, leaving a
copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or
property seized and promptly return this warrant to _ANN E. VITUNAC, UNITED STATES MAGISTRATE JUDGE_
as required by law.                                    U.S. Judge or Magistrate

20 July 2000    2/05 HCS
Date and time Issued

at    West Palm Beach, Florida
      City and State

ANN E. VITUNAC, U.S. MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 𝒪𝒪-4722-𝐵𝑆𝒮

IN THE MATTER OF THE APPLICATION      )
OF THE UNITED STATES OF AMERICA       )
FOR AN ORDER AUTHORIZING THE          )
INSTALLATION AND USE OF AN            )
ELECTRONIC TRACKING DEVICE            )      UNDER SEAL
ON A 1977 CADILLAC EL DORADO          )
BEARING FLORIDA TAG 146-251,          )
VEHICLE ID # 6L47S7Q220337, CURRECTLY LOCATED AT THE FORT LAUDERDALE\HOLLYWOOD
                                            INTERNATIONAL AIRPORT

## APPLICATION FOR TELETRACKING DEVICE AND SEALED ORDER

The United States of America, by and through the undersigned Assistant United

States Attorney, and hereby submits the following application in support of an order

authorizing the installation, use, monitoring, maintenance, and removal of an electronic

tracking device as physical surveillance aid for a ninety (90) day period on a 1977

CADILLAC EL DORADO BEARING FLORIDA TAG 146-251, VEHICLE ID #

6L47S7Q220337 (hereinafter referred to as the target vehicle), registered to and

utilized by Ronald COXE, and presently located in the Southern District of Florida,

which there is probable cause to believe is being used in connection with the following

violations of the controlled substances laws of the United States of America:

distribution of and possession with intent to distribute marijuana, in violation of Title 21,

United States Code, Section 841(a)(1), and conspiracy to commit such offenses in

violation of Title 21, United States Code, Section 846.

Page 1 of 3

The undersigned has discussed the requested use of the teletracking device with Task Force Agent Clyde H. Parry, who has participated in the investigation herein, and the undersigned has also examined his affidavit which is attached to this application and incorporated by reference herein, and which alleges facts that show there is probable cause to believe that the target vehicle is being used to commit the above-referenced offenses.

The United States further requests that in order not to disclose the existence of this investigation and jeopardize its integrity, that this application, the attached affidavit, and any resulting order be sealed until further order of the Court.

On the basis of the allegations contained in this application, and the attached affidavit, the undersigned respectfully requests this Court issue an order authorizing any agent of the Drug Enforcement Agency, with the assistance of any other law · enforcement officer involved in this investigation, to make surreptitious entry, and to monitor, maintain, and use a teletracking device as a physical surveillance aid for a period of ninety (90) days from the date of the installation of the teletracking device. The Drug Enforcement Administration shall be liable for any damage incurred to the vehicle in the course of transport, installation, and removal.

The applicant further requests that, pursuant to Title 18, United States Code, Section 3117(a), in the event that the target vehicle is transferred outside the territorial jurisdiction of this Court, that the installation, monitoring, maintaining, repairing, replacing, using and removing of the teletracking device may take place in any other jurisdiction within the United States.

Page 2 of 3

The United States requests that the authorization for installing, monitoring,

maintaining, repairing, replacing, and removing the teletracking device may take place

at any time of the day or night.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

Date: 071300                    By:  _____
                                     DONALD F. CHASE, II
                                     ASSISTANT UNITED STATES ATTORNEY
                                     Court No. A5500077
                                     500 East Broward Boulevard, Suite 700
                                     Fort Lauderdale, Florida 33394
                                     Tel. (954) 356-7255 ext. 3513
                                     Fax. (954) 356-7336

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE # OO - 4722 -BSS

IN THE MATTER OF THE APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR AN ORDER AUTHORIZING AN )
ELECTRONIC TRACKING DEVICE AS A ) UNDER SEAL
PHYSICAL SURVEILLANCE AID ON A )
1977 CADILLAC EL DORADO BEARING )
FLORIDA TAG 146-251, )
VEHICLE ID # 6L47S7Q220337, CURRENTLY LOCATED AT THE FORT LAUDERDALE HOLLYWOOD   BSS
                                              INTERNATIONAL AIRPORT

## ORDER TO SEAL

This cause comes before the Court on the Government's Motion to Seal. Considering the

grounds raised in said motion, and the Court being otherwise advised in the premises,

**IT IS HEREBY ORDERED** that the application, supporting affidavit and order of this

Court in the above-captioned matter, this order and the companion motion shall be sealed (except

for copies to be used by law enforcement personnel during execution of their official duties in the

investigation) and shall remain sealed in the custody of the Clerk of the Court until further order

of this Court.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida this 13th day of July

2000.

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

cc:    AUSA Donald F. Chase, II

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE # OO- 4722 BSS

IN THE MATTER OF THE APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR AN ORDER AUTHORIZING AN )
ELECTRONIC TRACKING DEVICE AS A )    UNDER SEAL
PHYSICAL SURVEILLANCE AID ON A )
1977 CADILLAC EL DORADO BEARING )
FLORIDA TAG 146-251, )
VEHICLE ID # 6L47S7Q220337, CURRECTLY LOCATED AT THE FORT LAUDERDALE\ HOLLYWOOD INTERNATIONAL
                                                                          AIRPORT DE

## MOTION TO SEAL

The United States of America, by and through the undersigned Assistant United States

Attorney for the Southern District of Florida, hereby moves this Court for an order sealing the

application, supporting affidavit and order of this Court in the above-captioned matter, this

motion and any resulting order, and in support hereof states the following:

1.    Concurrently with this motion, the government has filed a sealed application for a

court order authorizing the installation and use of an electronic tracking device aboard a 1977

CADILLAC EL DORADO BEARING FLORIDA TAG 146-251, VEHICLE ID #

6L47S7Q220337.

2.    These pleadings relate to an ongoing investigation into the possession with the

intent to distribute, distribution of marijuana, and conspiracy to do the same, in the Southern

District of Florida.

3.    Disclosure of the government's application, supporting affidavit, or this Court's

order relating thereto, could seriously compromise the investigation.

**WHEREFORE**, the United States respectfully requests that this Court order that this motion and any resulting order, the aforementioned application, affidavit, and the Court's order pertaining thereto be **SEALED**.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

Date: 01/13/00

By: _____
DONALD F. CHASE, II
ASSISTANT UNITED STATES ATTORNEY
Court No. A5500077
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394
Tel. (954) 356-7255, ext. 3513
Fax. (954) 356-7336

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE # 00 - 4722 - BSS

IN THE MATTER OF THE APPLICATION            )
OF THE UNITED STATES OF AMERICA             )
FOR AN ORDER AUTHORIZING AN                 )
ELECTRONIC TRACKING DEVICE AS A             )        UNDER SEAL
PHYSICAL SURVEILLANCE AID ON A              )
1977 CADILLAC EL DORADO BEARING             )
FLORIDA TAG 146-251,                        )
VEHICLE ID # 6L47S7Q220337, CURRENTLY LOCATED AT THE FORT LAUDERDALE\Hollywood Inter-
                                            NATIONAL AIRPORT

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR AN
## ORDER AUTHORIZING AN ELECTRONIC TRACKING DEVICE

I, Clyde H. Parry, being duly sworn, deposes and states:

1.      I have been employed with the City of Coral Springs Police Department for 13 years.

I have been assigned to the Vice, Intelligence, and Narcotics Unit of the Coral Springs Police

Department for over 11 years. I have been deputized as a federal agent with the Drug

Enforcement Administration (DEA). I have been assigned to work as a Task Force Agent with

the Fort Lauderdale District Office of the Drug Enforcement Administration (FLDO DEA) since

October of 1997. During the last 11 years, I have taken numerous classes that dealt with the

subject of narcotic offenses and narcotic related crimes  In addition to the classes, I have attended

specialized training that dealt with narcotics and the violation of narcotics laws. I have made

numerous arrests during my career for violation of narcotics laws and narcotic related crimes.

Through such training and work experience, I have gained reasonable insight into the methods

employed by persons engaged in the violation of narcotics laws

Page 1 of 9

2.     I and other DEA Task Force Agents along with members of the North Broward Drug Enforcement Unit are presently involved in the investigation of Ronald COXE, Robert ESKIN, William GREENWALD, Steven CLARK and others regarding offenses of distribution and possession of marijuana with intent to distribute and conspiracy to commit those offenses, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

3.     This affidavit is made in support of an application for an order authorizing the installation, monitoring, maintenance, use, repair, replacement and removal of an electronic tracking device as a physical surveillance aid on a 1977 CADILLAC EL DORADO BEARING FLORIDA TAG 146-251, VEHICLE ID # 6L47S7Q220337 (hereinafter referred to as the "target vehicle") which your affiant believes is being utilized by Ronald COXE, concerning the above numerated federal felonies. This affidavit is not intended to include all information related to this investigation, but only the information relied upon to obtain the requested order. All times stated in this affidavit are approximate.

4.     Based upon the information set forth in this affidavit, which includes information from sources, other law enforcement personnel, and intelligence information gathered during this investigation, your affiant has probable cause to believe that the individuals identified above have committed, are committing, and will continue to commit the above referenced offenses, and are using the target vehicle to assist in the commission of the above offenses.

5.     The installation, monitoring, and use of an electronic tracking device on the target vehicle will aid law enforcement in the investigation, by identifying other co-conspirators and their roles in the stated criminal activity, and the location of structures being utilized as stash facilities for marijuana as well as storage areas for vehicles that are used to transport the same.

6.    Your affiant knows from his personal experience that persons engaged in criminal activity frequently use counter surveillance techniques, while driving, in an effort to expose any law enforcement vehicles that may be following the persons engaged in criminal activity.

7.    An electronic tracking device is a physical surveillance aid that emits a signal that indicates where the target vehicle is located. This device can be monitored by law enforcement personnel at a central location through the use of an electronic grid that depicts a map of Palm Beach, Broward, and Dade counties in the Southern District of Florida. The device enables law enforcement to monitor the general location and direction of the target vehicle. The electronic tracking device does not intercept any communications involving persons within the target vehicle. The electronic tracking device merely serves as a technological advancement utilized to assist law enforcement as a surveillance aid.

8.    Based upon your affiant's training and experience, while installation of the electronio tracking device is able to be achieved relatively quickly and easily, in order to avoid detection by the target or other unknown individuals, installation must occur in a secure location. At the appropriate time, your affiant or other DEA agent will use a duplicate key or other device to enter, and possibly start and transport the target vehicle to a secure location to accomplish installation without detection. Once installation is effectuated, in approximately one hour's time, the vehicle, if transported from its present position, will be returned by your affiant or other DEA agent to its original location and secured. Other than installation of the electronic tracking device, agents will not seek to place any items in, nor remove any items from the vehicle, nor will any search of the vehicle or objects contained therein be undertaken, other than is necessary to effectuate the installation of the electronic tracking device (other than contraband in plain view).

Page 3 of 9

To preserve the confidentially of this investigation, it may be necessary to install the device surreptitiously during the night hours. The DEA will assume responsibility and liability for damage to the vehicle, while in the care, custody, and control of DEA personnel.

9.    There exists the possibility that the electronic tracking device may malfunction during the course of this investigation. If this occurs, it may be necessary to repair or replace the device. In addition, it will be necessary to remove the device at the conclusion of the investigation to prevent the investigation from becoming known.

10.    Your affiant through personal observations, documents and witness statements, believes probable cause exists that Ronald COXE, Robert ESKIN, William GREENWALD, and Steve CLARK and others in South Florida are using the target vehicle to assist them to commit the criminal activity specified in this affidavit.

11.    On April 5, 2000, DEA Task Force Agents, DEA Special Agents and members of the North Broward Drug Enforcement Unit were conducting surveillance of Mark Hastings, a convicted drug trafficker. Hastings served a federal prison sentence after pleading guilty to importation of marijuana and conspiracy to import cocaine. During surveillance conducted at Hastings' residence located in Boca Raton, Florida, law enforcement officers observed what appeared to be a narcotics transaction between Hastings and a person later identified as William GREENWALD. GREENWALD has a prior criminal history for violation of narcotics laws. Shortly after GREENWALD arrived at Hastings' residence, GREENWALD and Hastings exited the residence and left the area in separate vehicles. Both subjects were followed away from the residence by two surveillance teams. GREENWALD was later stopped by surveillance units and found to be in possession of approximately 2 pounds of marijuana.

Page 4 of 9

12. Hastings was followed by surveillance to a restaurant located at the 2200 block of West Glades Road in Boca Raton, Florida where he met with a person later identified as Ronald COXE. COXE is a prior convicted narcotics trafficker. Both men were approached by members of the surveillance team who requested consent to search both Hastings' and the target vehicles. Consent was granted and a certified narcotics detection K-9 alerted positively to a box located inside Hastings' vehicle. A search of the box revealed that the box contained $220,000.00 in U. S. currency. The currency was seized by members of the FLDO DEA on that date. The trunk area of the target vehicle was also alerted to by the certified narcotics detection K-9. A search of the vehicle revealed three large canvas bags that had a strong odor of marijuana emitting from them. The bags were also seized at the scene on that date.

13. On April 19, 2000, surveillance was once again established on Hastings. The purpose of the surveillance was to execute an arrest warrant for Hastings issued in Broward County for felony possession of marijuana. Hastings was stopped in Boynton Beach, Florida and taken into custody pursuant to the arrest warrant. A search incident to arrest revealed that Hastings was in possession of $50,000.00 in U. S. currency. This money was seized by members of the FLDO DEA at the scene on that date. Hastings advised law enforcement officers that he (Hastings) was taking the money to COXE to pay a portion of a debt owed for a previous marijuana shipment.

14. In May of 2000, Hastings decided to cooperate with law enforcement and provided the following information as it pertains to this investigation: Hastings stated that he had personal knowledge that GREENWALD had a source of supply for marijuana in Arizona. Hastings stated that COXE had approached him and asked Hastings to find a source for marijuana. Hastings stated that he approached GREENWALD and asked GREENWALD if GREENWALD would,

Page 5 of 9

utilizing his marijuana supplier, supply Hastings and COXE with marijuana. Hastings stated that GREENWALD agreed to supply COXE and Hastings with marijuana and the three men made arrangements to travel to Arizona to purchase approximately 100 pounds of marijuana. Hastings stated that the first trip to Arizona was in December of 1997.

15.    Hastings stated that the three men enlisted the assistance of Robert ESKIN, Steve CLARK, and other persons in the South Florida area to act as drivers, transporters and "catchers," (persons that accept mailed packages of marijuana and safely store the same until distributed). ESKIN and CLARK acquired post office boxes and warehouses that were to be utilized to "catch" and store shipments of marijuana that were mailed to Florida from Arizona.

16.    Hastings advised that he, COXE, GREENWALD, ESKIN, and CLARK mailed five shipments of marijuana totaling between 100 and 200 pounds per mailing. Hastings stated that around April of 1998 he and the before-mentioned persons decided to utilize a boat with a hidden compartment to transport the marijuana shipments by a trailer carrying said boat towed by a vehicle between Arizona and Florida. Hastings said that the boats were driven from Florida to Arizona, loaded with marijuana, and driven back to Florida. Hastings stated that they utilized a 19-foot boat to transport approximately 10 loads of marijuana to South Florida. Hastings said that each load weighed between 150 and 200 pounds. Hastings stated that they employed several other persons to assist with the storage and distribution of the marijuana. Hastings stated that the large boat was difficult to transport so COXE came up with a plan to utilize two smaller "john" boats with hidden compartments to transport the marijuana between Arizona and Florida Hastings stated that each "john" boat could hold about 200 pounds of marijuana inside the hidden

Page 6 of 9

compartments. Hastings said that the "john" boats began to be used to transport the marijuana between Arizona and Florida in April of 1999.

17.    Hastings stated that CLARK and ESKIN were the main drivers once the marijuana was purchased and the hidden compartments in the boats were loaded and secured. Hastings said that GREENWALD and COXE were responsible for purchasing the marijuana from the Arizona marijuana supplier. Hastings stated that he, ESKIN, and COXE would secure warehouses in South Florida to store the load of marijuana and the transport vehicles. Hastings and COXE were responsible for removing the rivets on the plate that covered the hidden compartment in the "john" boats, removing the marijuana, and re-securing the plate to the "john" boats. Hastings stated that approximately 10 loads of marijuana were transported by using the "john" boats from Arizona to Florida prior to the seizure by law enforcement from Hastings of the $270,000.00 in U. S. currency on April 5 and 19, 2000.

18    During the week of July 7, 2000, your affiant determined that COXE and ESKIN were planing to travel to Arizona for the purpose of purchasing and transporting marijuana from Arizona to South Florida. The marijuana is to be transported in the same manner as the previous 10 loads. Your affiant learned of this proposed shipment of marijuana through a series of recorded telephone calls and face to face meetings between Hastings, COXE, and ESKIN. During a July 6, 2000 recorded meeting between COXE and Hastings, COXE stated that he planned to fly to Arizona on July 10, 2000. Southwest Airlines has confirmed that COXE did travel to Arizona using his middle name "Arthur COXE" on that date.

Page 7 of 9

19.    On July 10, 2000, members of the FLDO DEA located the target vehicle parked in the public parking area of the Fort Lauderdale/Hollywood International airport. The target vehicle is registered to COXE. Information from Hastings as well as surveillance units has indicated that this vehicle is utilized solely by COXE. COXE has driven this vehicle to every meeting between himself, Hastings, and ESKIN.

20.    During a meeting between ESKIN and Hastings recorded on July 11, 2000, ESKIN stated that he had spoken to COXE in Arizona. ESKIN then placed a call to COXE in Arizona and both Hastings and ESKIN discussed the proposed marijuana shipment with COXE. Later that day, during a recorded phone call between Hastings and ESKIN, ESKIN stated that he (ESKIN) was probably leaving for Arizona on either July 12 or 13, 2000, for the purpose of driving the marijuana laden boat to South Florida.

21.    Based on the information contained in this affidavit, your affiant has probable case to believe that COXE, ESKIN, GREENWALD, CLARK, and others in South Florida are currently involved in the intrastate trafficking of marijuana from Arizona to South Florida. Your affiant believes that when COXE returns to South Florida, COXE will utilize the target vehicle, parked at the Fort Lauderdale/Hollywood International Airport, to drive to a secured stash warehouse or other location for the purpose of removing the marijuana from the hidden compartment(s) of the boat(s). Your affiant believes that the installation of an electronic tracking device will lead to the identification of the marijuana storage location as well as other unidentified co-conspirator(s). Your affiant requests that this Court issue an order authorizing the installation, monitoring maintenance, repair, replacement, use, and removal of an electronic tracking device

Page 8 of 9

for a period of 90 days, such period to be measured from the day law enforcement first installs

the electronic tracking device on the target vehicle, at any time day or night.

FURTHER AFFIANT SAYETH NAUGHT.


CLYDE H. PARRY
TASK FORCE AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn to and Subscribed before me this
13th day of July 2000

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 00 - 4722 - BSS

IN THE MATTER OF THE APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR AN ORDER AUTHORIZING THE )
INSTALLATION AND USE OF A )
ELECTRONIC TRACKING DEVICE ) UNDER SEAL
ON A 1977 CADILLAC EL DORADO )
BEARING FLORIDA TAG 146-251, 252 )
VEHICLE ID # 6L47S7Q220337 CURRENTLY LOCATED AT THE FORT LAUDERDALE HOLLYWOOD INTERNATIONAL
                                                                        AIRPORT

## SEALED ORDER

**THIS CAUSE** came before the Court on the sealed application of the United States of

America, by and through Assistant United States Attorney Donald F. Chase, II for the Southern

District of Florida, and supported by the affidavit of Task Force Agent Clyde H. Parry for the

installation and use of a electronic tracking device on a 1977 CADILLAC EL DORADO

BEARING FLORIDA TAG 146-251, VEHICLE ID # 6L47S7Q220337, registered to and

utilized by Ronald COXE, and currently located in the Southern District of Florida, in connection

with the investigation of violations of the narcotics trafficking laws of the United States. The

Court has thoroughly reviewed the application and affidavit and finds that there is probable cause

to believe that said vehicle will be used to facilitate the commission of violations of Title 21,

United States Code, Sections 841(a)(1), and 846.

Accordingly, it is hereby **ORDERED** that officers and agents of the Drug Enforcement

Administration (hereinafter referred to as "DEA") are authorized to enter the above described

vehicle in order to install an electronic tracking device, which device may be used and monitored

Page 1 of 3

for a period of ninety (90) days from the date of this Order.

**IT IS FURTHER ORDERED THAT:**

Any Special Agent of the DEA may surreptitiously enter, start and transport the above-described vehicle to a secure location for such period of time that it is necessary to install the electronic tracking device in or on the above-described vehicle.

Any Special Agent of the DEA, immediately following installation of the electronic tracking device, will return the above-described vehicle to the location from which it was obtained without placing any other items in, nor removing any items from (unless plain view narcotics) the above-described vehicle.

Any Special Agent of the DEA may monitor, for up to ninety (90) days from the date of this Order, a electronic tracking device emitting a signal (a beep, but not voices) installed in the above-described vehicle.

Any Special Agent of the DEA is authorized to reenter said vehicle to conduct necessary maintenance, adjustments, and repairs, or make replacements, in order to maintain the full and efficient operational capabilities of such device or to remove such device from said vehicle. The Drug Enforcement Administration shall be liable for any damage incurred to the vehicle in the course of transport, installation, and removal of the electronic tracking device.

Any Special Agent of the DEA may install, monitor, maintain, repair, replace, remove, and use the electronic tracking device at any time of the day or night.

Pursuant to Title 18, United States Code, Section 3117(a), in the event that the target vehicle is transferred outside the territorial jurisdiction of this Court, the installation, monitoring, maintaining, repairing, replacing, removing, and using of the electronic tracking device may take

Page 2 of 3

place in any other jurisdiction within the United States.

The Drug Enforcement Administration shall remove the electronic tracking device as soon
as practicable after the objectives of the surveillance are accomplished or prior to expiration of
this Order, whichever first occurs, unless extended by Order of this Court or another Court of
competent jurisdiction.

Due return be made by the United States within ten (10) days of the removal of the
electronic tracking device from the above-described vehicle.

This application, the affidavit in support of the application, and this order shall be
**SEALED** by the Clerk of Court until further order of this Court.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida this 13th day of July

2000.

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

Certified to be a true and
correct copy of the document on file
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida
By
Deputy Clerk
Date 7-13-00

Page 3 of 3